(98 App. Div. 40)

FEINER v. REISS.

(Supreme Court, Appellate Division, First Department. November 18, 1904.)

1. RELIGIOUS CORPORATIONS—SOCIETY OF SHAKERS—CONVEYANCE OF REAL
      ESTATE.
          Though Laws 1839, p. 146, c. 174, Laws 1849, p. 527, c. 373, and Laws
      1852, p. 275, c. 203, authorize future trusts of real and personal estate
      for the benefit of the Shaker Society, and vest in the trustees of the
      society the legal title to all its property, there being no express act making the society a corporation, and it not having been incorporated under
      a general act, it is not a religious corporation; and hence an order of
      the Supreme Court is not necessary in order to render a conveyance of
      the society's real estate valid.

2. SAME—SOCIETY'S REAL ESTATE—WHERE TITLE IS VESTED.
          Laws 1839, p. 146, c. 174, as amended, vests in the trustees of the
      Society of Shakers the legal title to all the property of the society, and
      the "Covenant" of the society vests the fee of all lands in the trustees,
      and expressly surrenders any rights, title, or claim of the members to
      the property of the society. Held, that the title to the land of the society is not in all the members, and hence a conveyance of real estate by
      the society is good without all the members joining.

3. SAME—CONVEYANCE BY SOCIETY—CONSENT OF MINISTRY AND ELDERS.
          Laws 1839 p. 146, c. 174, as amended, vests the legal title to all the
      real estate of the Society of Shakers in the trustees, and the Shaker
      Church Covenant, which is the constitution of the society, vests in the
      trustees the fee, and with respect to sales prescribes that they shall
      meet with the approval of the ministry and elders. Held that, it having

been the uniform practice of the society, on a sale of its real estate, to manifest approval of a sale verbally, in informal consultation between the trustees, ministry, and elders, a conveyance by the trustees after such approval was valid without formal action by the ministry and elders as a board or joint council.

4. SAME—CONVEYANCE OF SOCIETY'S REAL ESTATE—MARKETABILITY OF TITLE. On an issue as to the marketability of a title derived from the trustees of the society it appeared that the approval of the ministry and elders had been had according to the custom of the society, and that the present trustees had executed a deed quitclaiming all the interest of the society, and that the ministry and elders had given their approbation in writing. *Held*, that the title conveyed was a marketable one.

Action by Solomon Feiner against Max Reiss. Submission of controversy as to marketability of property. Judgment for plaintiff.

The parties hereto contracted for the sale of the premises 111 and 113 East Seventy-Fifth street, but the defendant declined to complete the contract and take the property on the ground that the plaintiff could not give a marketable title. The title to the property was conveyed to Benjamin Gates and Robert Valentine, trustees for the Society of Shakers of Mt. Lebanon, on November 27, 1885, and by them on April 1, 1890, deeded to John S. Robinson, through whom plaintiff received the property. In addition to the deed from the trustees to Robinson, the plaintiff obtained and tendered to defendant a written consent and approbation by the present ministry and elders of the society to the execution by the present trustees of a quitclaim deed to the plaintiff, and a written confirmation and approbation by them of the conveyance made by the former trustees to Robinson, and a quitclaim deed by the present trustees to the plaintiff. Upon this submission there is presented a copy of the "Shaker Church Covenant" and affidavits stating the customs and practices of the society. The covenant recites that the members are "connected together as a religious and social community," and that "the great object, purpose, and design of our uniting ourselves together as a church or body of people in social and religious compact" is to occupy, improve, and diffuse our various gifts and talents, both of a spiritual and temporal nature." The covenant states that all members do consecrate and devote their persons, services, and property to the purposes of the society, and quitclaim all private and personal right, title, and interest in and to the estate and property so consecrated, agreeing to make no claim nor bring any charge for debt, damage, or account against the church or society or its officers. The covenant provides that the primary administration of parental authority is settled in the ministry, including four persons, any vacancy to be filled by the surviving ministers in council with the elders and others. To the ministry is assigned the duty, among others, of nominating and appointing in connection with the elders, ministers, elders, deacons, and trustees. The latter are "invested with power to take the general charge and oversight of all the property, estate, and interest for the benefit of the church; also all gifts, grants, and donations; the property to be held by them in trust by them for the church or society. And no disposal of any real estate of the church, nor any important contract, shall be considered valid without the previous approbation of "the ministry and elders," to whom the said deacons and trustees are and shall at all times be held responsible in their transactions." The covenant specifies as to books to be kept by the trustees, etc. The powers of trustees descend in regular succession. The manner of obtaining the approval of the ministry and elders is not stated in the covenant, but from the affidavits it appears that such approval is always obtained of any purchases, sales, or transfers of real estate prior thereto by consulting the ministry and elders, who verbally signify their approbation, the purchase or sale being then consummated by the trustees. The affidavits also state that such approval was in this instance had and obtained, and the purchase and the sale of this property thus sanctioned by the society. The facts stated in the affidavits are not denied.

The defendant's objections to the title tendered are (1) that, if the Society of Shakers is a religious corporation, no sale by it or its trustees is valid without an order of the Supreme Court; (2) that, if it is an unincorporated association, title to its real estate is vested in all the members of the society, who must join in the deed; and (3) that, if the trustees have power to sell with the approbation of the ministry and elders, as set forth in the Shaker Covenant, no disposal of the real estate can be made unless after action taken by the ministry and elders as boards or joint council, and the written consent cannot be accepted because the individuals do not represent a deliberate board or council where such consent was obtained; and (4) that the annual income of the society from beneficial interests in real or personal property may be in excess of $25,000, the limitation fixed in the Shaker act.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Isaac Moss, for plaintiff.
Sol. D. Rosenthal, for defendant.

O'BRIEN, J. The first question presented is whether the Shaker Society is or is not a religious corporation under the law. If it is, then a sale of its real estate could not be made in this state without the sanction of the Supreme Court of an act of the Legislature authorizing such sale. The defendant concedes that "they are not incorporated under any statute of the United States, or of any state of the United States, or of any foreign country, nor is there any certificate of incorporation anywhere on file within the state of New York." There has been some legislation, however, affecting the Societies of Shakers (chapter 174, p. 146, Laws 1839; chapter 373, p. 527, Laws 1849; and chapter 203, p. 275, Laws 1852), the purpose of which was to authorize future trusts of real and personal estate for the benefit of any such society; but nothing in this legislation bears upon the legal status of such a body, or solves the doubt as to whether it is or is not a corporation or an incorporated society. With respect to property and contracts, and particularly with respect to the provisions of the law of 1839, which recognizes the right of trustees to be succeeded by others, and thus in perpetuity to hold the title to property of the society, it was held in White v. Miller, in 71 N. Y. 118, 27 Am. Rep. 13, that "the authority to have the property held by trustees in perpetual succession is essentially a corporate power." The court, however, expressly refused to decide the question which we have under consideration of whether the society or its trustees were "a corporation in a full and unrestricted sense," and, if so, whether a religious or a business corporation. As therein said:

"But we are of opinion that the trustees may and should be regarded as a corporate body, and the property held by them as corporate property, for the purposes of the remedy by suit, to enforce any authorized contract made by them for the society. It is apparent that the prosecution of business and the making of contracts connected herewith was one of the purposes contemplated in the organization of the Shaker Societies. This was not a mere incident to the religious features of the organization. It is also clear that the acquisition of property as the result of business enterprises in which the society should engage was contemplated."

The question which, as we have pointed out, was in that case left undecided, as to whether or not this was a corporation, busi-

ness or religious, requires to be passed upon. We assume the general rule to be that no body of men can become associated together and can acquire the rights, privileges, and obligations of a corporation without express legislative sanction. In other words, a corporation is the creature of the state, and every corporation owes its existence and its right to incorporate to express legislative enactment. As said in Am. & Eng. Ency. of Law, vol. 7, p. 632:

"A corporation is a body created by law * * * and possessed of a franchise by virtue of which it subsists as a body politic." And (page 695): "The powers of a corporation, like its corporate existence, are derived from the Legislature. * * * Its charter, therefore, is the measure of its powers, and it can legally exercise such powers only as are expressly or impliedly conferred by that instrument."

This principle is thus stated in Morawetz on Corporations, § 316:

"The charter of a corporation serves a twofold purpose: It operates as a law conferring upon the corporators the right or franchise of acting in a corporate capacity, and, furthermore, it contains the terms of the fundamental agreement between the corporators themselves."

In Cook on Corporations (vol. 1, p. 3) it is said:

"A corporation can be created by and under legislative enactment, and by that alone."

And upon this subject Chief Justice Marshall, in the Dartmouth College Case, said:

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it either expressly or as incidental to its very existence."

The conceded fact here that there is no express act making this society a corporation, and that it never was incorporated under a general act, seems to us to be conclusive upon the question. We regard it as a voluntary unincorporated society, which has been formed by the consent of the individuals composing it for religious and business purposes, and which has obtained, by the legislation to which we have adverted, the corporate power to have property held by trustees in perpetual succession. This conclusion disposes of the first objection made to the title, because, not being, strictly speaking, a religious corporation, the society required neither the approval of the court nor an act of the Legislature to enable it to convey title.

Nor do we think there is force in the second objection, to the effect that, if the society is an unincorporated association, title to its real estate is vested in all its members, who, therefore, must join in the execution of a deed. This might be entirely sound were it not for the legislation to which we have already referred (chapter 174, p. 146, Laws 1839, as amended), which vests in the trustees the legal title to all the property of the society. In addition, we have, in the very terms of the covenant of the society itself, the provision which vests in the trustees "the fee to all the lands of the society." And by one of the articles of the covenant, binding upon the individual members, we have the express surrender by

the members of any right, title, or claim to any of the property of the society; and by such covenant the "dedication and consecration to the community of all individual property confirmed by the absolute and unqualified release and quitclaim to the trustees of all personal right, title, and interest of all individual members in and to all property."

The third objection is that, conceding the power of the trustees of the society to sell with the approbation of the ministry and elders, it was still incumbent upon a vendor to produce the minutes or formal resolution or other written proof of the meeting in a deliberate board or council where such written consent was obtained. It is undoubtedly the rule, sustained by many authorities, of which People's Bank v. St. Anthony's R. C. Church, 109 N. Y. 522, 17 N. E. 408, is an example, that:

"The trustees of a corporation have no separate or individual authority to bind the corporation, and this although the majority, or the whole number acting singly, and not collectively as a board, should assent to the particular transaction."

The reason which lies at the foundation of the rule is well stated in that case in the following language:

"The statute creating it may prescribe its mode of action, and when the methods and agencies by which it may act are designated that designation operates as a limitation, and excludes other modes of action."

As we have endeavored to point out, the Shaker Society is not a corporation, religious or otherwise, but an unincorporated society having the corporate power and right of succession. There is no statute creating or which prescribes its mode of action, and hence it was entirely competent in its by-laws, or, as in this case, by its Covenant, to prescribe for itself its mode of action. We fail, therefore, to find any force in the objection that it was essential for the vendor to produce a formal resolution or written evidence of the approbation of the ministry and elders, and for the sufficient reason that the defendant concedes that such never was the custom of the society, and that its uniform and unvaried practice on the purchase, sale, or transfer of real property has been to manifest approval verbally in informal consultation had between the trustees, ministry, and elders.

It is not disputed but that in the present case the trustees who sold to Robinson followed strictly the practice of the society regulating a sale, and, before making such sale, consulted with the ministry and elders, obtaining their approval in the usual way. The statute (chapter 174, p. 146, Laws 1839, as amended by chapter 373, p. 527, Laws 1849) vests the legal title in the trustees, "who, in conformity with the constitution of such society, have been duly chosen and appointed." The Shaker Church Covenant, which is the constitution of the society, likewise vests in the trustees the fee of all the lands of the church, and, with respect to sales, prescribes that they shall meet with the approval of the ministry and elders. It is not claimed, nor is it the fact, that there is anything in the covenant requiring the ministry and elders to meet in deliberate board meetings or joint council, and there to manifest

their approbation in a formal, fixed way, or which required their approval to be in writing. The distinction between a religious corporation and a religious body or society having the right to prescribe its own rules and fix its methods of proceeding appears in contrasting the case of People's Bank v. St. Anthony's R. C. Church, supra, with the case of Matter of the First Presbyterian Society of Buffalo, 106 N. Y. 251, 12 N. E. 626. As correctly urged, therefore, by the plaintiff, inasmuch as the necessity for the approbation of the ministry and elders is found not in any statute, but solely in the voluntary agreement of the community itself, the community has a right to interpret its own requirements, and its interpretation long and invariably followed is decisive of the question of whether the approbation of the ministry and elders was properly obtained in the case at bar. Upon this record we do not find any basis for the defendant's contention, because he concedes that the facts stated in the affidavits as to the action taken by the society in reference to this particular property show that not only the conveyance by the trustees evidenced by the deed, but the approbation of the ministry and elders was in the form which the society itself prescribed.

We deem it unnecessary, however, to further dwell on this objection, because, whatever criticism may have been made with respect to the title, resting as it did upon the deed from the former trustees to Robinson, the present trustees have executed to the plaintiff a deed quitclaiming to him all the right, title, and interest of the society in and to the property; and in addition we now have the approbation in writing by the present ministry and elders, not only to the original conveyance to Robinson, but also to the execution by the present trustees of the quitclaim to plaintiff.

The remaining objection is based upon that provision of the Shaker act which limits the beneficial interest which any such society shall have in property, real or personal, by directing that the annual value or income shall not exceed $25,000. It is suggested that it is possible that this society may have property exceeding that amount; but against this possibility or speculative suggestion we have the affidavit which has been submitted in behalf of plaintiff, from which it appears that the annual value or income of the property held by the society is within the limit. We do not think, therefore, that it rests with the defendant, in view of this statement and the concession made by him that the facts stated in the affidavits are true, to raise or urge this objection, which, upon the record, has neither fact nor inference to support it.

We think, therefore, that the question submitted as to whether or not the plaintiff has a good and marketable title to convey to the defendant which would compel him to specifically perform the contract before the court should be answered in the affirmative.

Judgment accordingly for plaintiff, with costs. All concur.