Michael E. Sweeney, J.
This is a motion brought by the defendant seeking an order and judgment dismissing the complaint pursuant to CPLR 3211 upon the ground that the complaint does not state a cause of action. The action itself is one for declaratory judgment.
The facts out of which this controversy arose are not in dispute. The plaintiff is a domestic corporation organized pursuant to chapter 91 of the Laws of 1856 of the State of New York, the pertinent parts of which are as follows:
“an act to incorporate the St. Lawrence University and Theological Seminary. * * *
“ § 1. Jacob Harsen * * * and their successors, are hereby constituted a body corporate, by the name of ‘ The St. Lawrence University,’ for the purpose of establishing, maintaining and conducting a college in the town of Canton, St. Lawrence county, for the promotion of general education, and to cultivate and advance literature, science and the arts; and also to establish and maintain a theological school and department, in Canton, aforesaid.
“ § 2. The persons named in the first section of this act, shall be the first trustees of said corporation and may at their first, or any other meeting, increase their number to thirty, by election of the additional number.
“ § 3. Said corporation shall have power to purchase, take and hold real and personal estate and to sell and otherwise dispose of the same for the use of the corporation; to take and hold, in like manner all grants, gifts, devises, and bequests to the Universalist Educational Society, intended for the support of the said college, or the theological school to be established under this act; to sue and be sued in their corporate name and make and use a corporate seal, and alter the same at pleasure, but shall not at any one time, own real estate yielding an income of over fifteen thousand dollars per annum.
“ § 4. The corporation shall have power to establish a theological school for the Christian denomination called Universalists as a separate department of said college or university; to take and receive separate property, and hold the same for the maintenance of such theological department; and to conduct and maintain the same for the purposes of theological education.
*1081 “ § 6. The corporation hereby created shall possess the powers, and be subject to the provisions of the third title, eighteenth chapter of the first part of the Revised Statutes, so far as the same are now existing law. ’ ’
This act creating the plaintiff was amended by chapter 40 of the Laws of 1910, which provides as follows:
‘ ‘ an act to amend chapter ninety-one of the laws of eighteen hundred and fifty-six, entitled ‘An Act to incorporate the St. Lawrence University and Theological Seminary,’ by providing for a separate board of trustees for such theological seminary and defining its rights and powers. * * *
“ § 4. Theological school. The corporation shall have power to establish a theological school, for the Christian denomination called Universalists, as a separate department of said university and, when so established, shall thereafter maintain the same; such theological school shall have power to take and receive separate property, to hold the same for its maintenance and to conduct and administer the same for the purposes of theological education. The property, interests and affairs of such theological school shall be administered by a separate board of nine trustees, who .shall be elected, in the first instance and from time to time as vacancies occur, by the executive board of the New York State Convention of Universalists. All separate property heretofore or hereafter received by said university for the uses, purposes and maintenance of theological education, shall forthwith be turned over by the trustees of said university to said separate board of nine trustees. Said separate board of nine trustees shall have power to sue and to be sued under the corporate name of the Trustees of the Theological School of the Saint Lawrence University, to appoint the faculty and the teachers of such theological school and to change the same, to adopt by-laws, to prescribe the courses of study, and to regulate the government and instruction of the students of such theological school. All powers not by this section conferred upon said separate board of trustees of the theological school are vested in the trustees of the Saint Lawrence University, who are hereby empowered to fill any and all vacancies which may hereinafter occur in their body. ’ ’
This amendment was brought about by the fact that certain foundations had refused to financially assist the plaintiff because it was a sectarian institution affiliated with the Universalists. It was in furtherance of a desire to remove this obstacle that a separate board of trustees was appointed for the theological school, and its control and management was *1082 vested in this separate hoard of trustees. The plaintiff also at that time transferred all assets previously received and earmarked for the theological school to said board of trustees.
Plaintiff’s charter which had been granted by the 1856 act of the Legislature was subsequently amended on several occasions. Plaintiff and defendant continued to operate under the amendment of 1910 until June 30, 1965, when the trustees of the theological school discontinued operations because of the lack of theological students. These pertinent facts have been alleged by plaintiff in its complaint.
It is the contention of the plaintiff that the defendant is merely a subordinate board whose powers are limited to the operation of a theological school as a department of the plaintiff.
Defendant contends that the complaint fails to state a cause of action for the reason that defendant is a separate corporation created by chapter 40 of the Laws of 1910, and as such separate corporate entity, it owns the assets which can be used and disposed of solely in accordance with legislative command.
A resolution of this controversy narrows to a determination of whether or not this theological school was incorporated by the act of 1910. This determination must be ascertained from an interpretation of the 1856 and 1910 legislation, together with any of the acts of the parties which may shed light on the intent of the Legislature.
The plaintiff was initially created by the Legislature for the dual purpose of providing education for individuals pursuing college training in the arts and sciences and those desirous of entering the TJniversalist ministry. This dichotomy of purpose was adhered to in spite of financial difficulties until 1910 when this decisive amendment was enacted separating the control of the theological school from the college. There can be no doubt of the purpose of the 1910 amendment. It was manifestly to remove the objection of sectarianism advanced by the various foundations which were otherwise disposed to assist institutions of learning such as plaintiff.
The plaintiff, like all corporations, was created by the State, and possesses only those properties which the enabling act conferred upon it. (Dartmouth Coll. v. Woodward, 4 Wheat. [17 U. S.] 518, 636.) These initial properties may be broadened, narrowed, or otherwise changed by a subsequent act of the Legislature. This is precisely what was done by the act of 1910. Such an amendment, however, is subject to the same rules of construction as the original act.
The Legislature, whether initially or by an amendment to the original statute merely acts to reflect the intent of the *1083 original incorporators and subsequent trustees to accomplish their desired objectives.
If the defendant in this litigation is a corporation it must derive that status either expressly or impliedly from the amendment of 1910. In the instant case the title to the original act reads, “ ax act to incorporate the St. Lawrence University and Theological Seminary.” This, in my opinion, clearly indicates but a single corporate entity with a two-fold educational purpose. Any change in this status must be similarly clearly expressed in any subsequent amendment. All subsequent amendments, and particularly the controlling one of 1910, contain the same title, indicating the continuation of a single corporation.
The 1910 amendment recites that plaintiff shall have power to establish a separate department as a theological school. This right it possessed by the original act. Consequently, there was no change. In each, the word “department” is used. This word is defined in the Oxford Universal Dictionary [3d ed.] as “ A separate division of a complex whole, esp. of activities or studies.” Applying this definition to the instant case, it suggests to me that the theological school was intended to be a separate division of the university, and not an independent corporation.
From a careful reading of the two acts one finds it clearly demonstrated that there was to be a partial separation of the two schools, but more important, the plaintiff was no longer to administer the finances of defendant. The original act provided that the plaintiff had the power to take and hold “ all grants, devises, gifts and bequests to the Universalist Educational Society, intended for the support of the said college, or the theological school to be established under this act ”. The amendment provided that these funds were to be administered by a separate board of trustees. The State confers powers and rights upon a corporation, but it also creates obligations. One of the obligations specifically imposed upon the plaintiff by the original act was the administration of the theological finances. In order to be relieved of this obligation and to have the funds administered in a different manner, an amendment to the initial act was required. This was the intended purpose of the 1910 amendment. The control of the funds was placed by the amendment in a newly created separate board of trustees. This removed the objection of the various foundations, since any money received by plaintiff would remain with plaintiff to be administered by it, and consequently, not commingled with or used for theological purposes, likewise, it would also keep the *1084 theological school money separate and distinct. It did not require, in my opinion, the creation of a separate entity, such as a corporation, to accomplish this desired result.
A further analysis of the language of both statutes sustains the conclusion that there was no intention to bring about a complete divorce between plaintiff and defendant by creating a new and separate corporation. In the original act granting a charter to the plaintiff there is no question but that the Legislature was creating a corporation. Plaintiff is repeatedly referred to as a corporation, e.g., “ an act to incorporate ” “ are hereby constituted a body corporate by the name of ‘ The St. Lawrence University ’ ” “ trustees of said corporation ” “ said corporation shall have powers ”. The plaintiff is similarly so designated in the 1910 amendment, ‘ ‘ The corporation shall have power” etc. Contrast this language with that of the act of 1910 on which act defendant must rely for corporate existence. Nowhere in that act is defendant referred to as a corporation. Couple this fact with the more significant wording appearing in the title of the act, ‘1 an act to amend * * * by providing for a separate board of trustees for such theological seminary and defining its rights and powers.” How easy it would have been for the Legislature to entitle the 1910 amendment, ‘1 an act to amend [the original Act] by incorporating the Theological School.” It is apparent from a reading of these two statutes that in the case of the plaintiff the Legislature made it abundantly clear that it was creating a single corporation and continued through all subsequent amendments to regard it as such. To me, the conclusion is inescapable that the failure to use equally clear language designating defendant as a corporation demonstrates that the Legislature never so intended it. It is true that the Legislature provided for trustees, and it is equally true that corporations have trustees, but not all bodies composed of trustees are corporations. No group of individuals such as this board of trustees associated to administer the activities of the theological school can acquire corporate status without authority from the State, which I conclude is lacking-in this case. (See Feiner v. Harris, 98 App. Div. 40.) This is so even though the defendant refers to itself as a corporation, or even formally enacts by-laws designating itself a corporation.
The defendant relies strongly on the language used in the 1910 amendment providing that the board of trustees may sue and be sued “ under the corporate name of the Trustees of the Theological School of the Saint Lawrence University”. I cannot conclude that the Legislature intended by the isolated use of the word “ corporate ” to give defendant a separate *1085 corporate existence. As the Court of Appeals stated in People v. Ryan (274 N. Y. 149,152): “ In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. * * * Literal meanings of words are not to be adhered to or suffered to ‘ defeat the general purpose and'manifest policy intended to be promoted ’ It is most meaningful to me that the Legislature used the words “ the corporate name ” instead of “ their corporate name.” Again, contrast this language with that used in describing the same function to be performed by plaintiff, i.e., “to sue and to be sued in their corporate name.” (Emphasis supplied.) I conclude that the Legislature used the word “corporate” in a general sense. Since it was giving the board complete control over the funds of the theological school, it wisely anticipated that there might be occasions when the board would have to resort to litigation concerning the administration of the theological funds. Thus, it used the words “ the corporate name ” to designate the manner in which it could sue and be sued.
It should be remembered that the act of 1910 conferred upon the plaintiff, referring to it as “The corporation” the right to establish a separate department of the university. Only the State could clothe this department with corporate status. The State never intended to give plaintiff the right to clothe defendant with corporate status, and I seriously doubt it could.
It is also significant that the 1910 amendment provided that “ All powers not by this section conferred upon the said separate board of trustees of the theological school are vested in the trustees of the Saint Lawrence University”. In other words, for certain activities the defendant board was to find authority in plaintiff’s charter, e.g., the power to convey real property. If the Legislature had intended defendant to be a separate corporation it would have given it all of the powers it needed for corporate status. Yet, this very language was continued in all amendments to the plaintiff’s charter subsequent to the amendment of 1910.
To summarize, from all of the indicia of legislative intent, I conclude that the defendant is not a corporation. The change to plaintiff’s original charter was necessitated by an alteration of circumstances not initially contemplated. Due consideration should be given to the circumstances compelling the amendment in attempting to arrive at the intended result. I must conclude that the Legislature did not amend the original act for the purpose of creating a new corporation, but to permit the existing corporation to continue its original dual pursuits in a modified manner. The amendment should go no further than *1086 necessary to accomplish this legislative intent. “ The language of the statute must be read in the light of what it was intended to accomplish.” (Matter of Guardian Life Ins. Co. v. Chapman, 302 N. Y. 226, 235.)
The motion to dismiss the complaint is, therefore, denied. Since there are only questions of law presented, pursuant to CPLR 3211 (subd. [c]), I treat this motion as one for summary judgment and grant judgment to the plaintiff.